# GLEN JOSEPH PARDUE, JR., b/n/f v. CITY OF SWEETWATER.

## GLEN JOSEPH PARDUE v. CITY OF SWEETWATER. —390 S.W.(2d) 683.

Eastern Section. January 14, 1965.

Certiorari Denied by Supreme Court May 3, 1965.

Yancey, Butler, Ball & Kidwell, Knoxville, for plaintiff in error, City of Sweetwater.

Crawford & Crawford, Maryville, and Billy R. Ridenour, Sweetwater, for defendants in error, Glen Joseph Pardue and Glen Joseph Pardue, Jr.

COOPER, J. Referring to the parties as they appeared below, the plaintiff Glen Joseph Pardue, Jr., an infant, instituted this action by next friend seeking to recover damages for personal injuries sustained when he fell from a water tank erected and maintained by the defendant, City of Sweetwater. His father, the plaintiff Glen Joseph Pardue, brought suit to recover damages for the loss of his son's services, and to recover expenses incurred in treating his son's injuries. The jury returned verdicts of $10,000.00 for the minor plaintiff, and $500.00 for his father. These verdicts were approved by the trial court and, on the overruling of defendant's motions for a new trial, this appeal in error resulted.

The record shows that the parties stipulated that the City of Sweetwater erected and maintained a water tank, 60 feet high, in or near a residential area in the City of Sweetwater. A metal ladder was attached to the side of the tank and extended from its top to within three feet of the ground. The ladder was in good condition, and there were no defects in its construction. The parties further stipulated that the City property was unfenced and unprotected and that the City of Sweetwater by the exercise of reasonable care should have known that children played around and upon the water tank.

On June 26, 1962, the minor plaintiff, aged 11 years and 8 months, in company with three other boys went onto the City property to play around the defendant's water tank and to climb it.

After his playmates had climbed the tank and descended, Glen, Jr., climbed about half-way up the ladder, started down and fell, receiving serious injuries to his arms and back.

The plaintiff was unable to testify how he fell, or what caused him to fall. He did state, however, that just prior to the fall, one of his friends informed him that the police were coming. On examination, Glen, Jr., stated that he could not say whether or not this information caused him to hurry his descent or caused him to fall.

The record further shows that on several occasions prior to his fall from the tank, the minor plaintiff had been warned by his parents of dangers incident to climbing trees and elevated structures. Plaintiff's mother testified that plaintiff was of normal intelligence and appeared to understand the warning and to appreciate the fact that climbing was dangerous. The plaintiff also

testified that he understood his parents' warning, and appreciated the danger of falling from "trees and everything," but didn't realize it was dangerous to be on the tower as he had not been warned against climbing it.

The theories on which the plaintiffs sought to recover were that the tank and the area around it became a playground for children requiring the defendant to take reasonable precautions for their safety and that, under the circumstances, the doctrine of attractive nuisance applied.

■■ The attractive nuisance doctrine, as recognized by the Courts of Tennessee, is based upon the theory that one, who maintains upon his premises an agency or condition which is dangerous to children of tender years by reason of their inability to appreciate the danger, and which may reasonably be expected to attract children to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. McCulley v. Cherokee Amusement Co., 182 Tenn. 68, 184 S.W.(2d) 170; Ray v. Hutchison, 17 Tenn.App. 477, 68 S.W.(2d) 948; see also Williams v. Town of Morristown, 32 Tenn.App. 274, 222 S.W.(2d) 607, and 36 A.L.R. 136. In adopting the attractive nuisance doctrine, the Supreme Court of this State limited its application to those situations where the child was enticed or lured to the defendant's premises by the instrumentality or condition causing the harm. Kelley v. Tennessee Electric Power Co., 7 Tenn.App. 555; Gouger v. Tennessee Valley Authority, 188 Tenn. 96, 216 S.W.(2d) 739, 6 A.L.R.(2d) 750. Otherwise, the elements necessary for recovery are those shown in Sec. 339 of the Restatement of Torts.

The harshness of the requirement of enticement has been alleviated partially by the so-called "playground

theory'', as voiced in Gatlinburg Construction Co. v. McKinney, 37 Tenn.App. 343, 263 S.W.(2d) 765. See also Wade, Torts—1954 Tennessee Survey, 7 Vand.L.Rev., 967; Noel, Attractive Nuisance Doctrine in Tennessee, 21 Tenn.L.Rev. 658, 661.

■ The basis of the playground theory, as set out in the Gatlinburg case, ''is that if an owner of land knows that children of tender years habitually play upon his land to the extent that it becomes known as a playground for children, he is bound to exercise ordinary care to see that his premises are reasonably safe for the purpose and is duty bound not to permit them to be exposed to a known danger. See also 65 C.J.S. Negligence sec. 40, p. 505; Ann. 8 A.L.R. (2d) 1285; Restatement of Torts, Section 339.

■ ■ ''Refinements of the rule set forth in these authorities limit its application to situations where the landowner knows or, by the exercise of reasonable care, should know that children of immature years are habitually trespassing upon his land to use it as a playground, under conditions other than natural, which the landowner knows or should know involve an unreasonable risk of bodily injury and which children because of their youth will fail to discover and appreciate. To bring property within the rule its use as a playground must be generally known in the immediate vicinity and not be merely occasional or intermittent.

■ ''We think factors to be considered in determining liability under the rule include the slight value and utility to be derived by the owner in maintaining the condition or the small cost of removing the danger, as compared to the likelihood and seriousness of injury to young chil-

dren, and the presence or absence of guards, fences and warnings.''

As noted by Dean Wade, in Torts—1954 Tennessee Survey, 7 Vand.L.Rev. 967, the two doctrines when combined approximate the majority interpretation of the attractive nuisance doctrine as expressed in Section 339 of the Restatement of Torts, wherein the element of attraction is important only in so far as it may mean that the trespass of the child is to be anticipated. (See also Prosser on Torts, 3rd Ed., Sec. 59, pp. 374 et seq.)

There the rule is announced that ''a possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.'' Sec. 329 of the Restatement of Torts.

In argument, the defendant conceded that the stipulations and evidence would support a finding that it had reason to anticipate the presence of the defendant and other children on the premises where the tank was located, and that it could have made it more difficult for the plaintiff to climb the tank at little cost and without

destroying its utility. However, the defendant strongly urges that the evidence shows that the condition created by the erection of the tank, with its ladder, was not one involving an unreasonable risk of harm to the plaintiff, nor was it a condition which the plaintiff would not discover, or, having discovered, would not appreciate any danger attendant thereto, and, consequently, plaintiff could not recover. In support of this position, the defendant cited numerous cases most of which are contained in 145 A.L.R. 322, or in the supplement thereto. The thread of thought that permeates these decisions is that the danger of injury from falling from a height is obvious and is one that is fully understood by children of even tender years. As stated in McHugh v. Reading Co., 346 Pa. 266, 30 A.(2d) 122, 145 A.L.R. 319,

"No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity results almost from animal instinct. Certainly a normal child nearly seven years of age—indeed any child old enough to be allowed at large—knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because * * * of their 'immature recklessness,' but the possessor of land is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type."

In Lopez v. Capitol Company, 141 Cal. App.(2d) 60, 296 P.(2d) 63, a trespassing child, 7 years of age, was injured when he climbed upon and fell from a scaffold erected upon a public sidewalk. In denying recovery, the Court stated at page 65 of 296 P.(2d) that "[t]hus

far, the doctrine (attractive nuisance) has never been applied in a case involving only an opportunity to climb upon something, the danger of falling being something that is known and realized by all children from earliest infancy, or in a case involving a mere attraction to something as an opportunity to play.''

With regard to climbing in general, the court in the Lopez case stated at page 66 of 296 P.(2d): ''It can hardly be said, in reason, that this child was too young to appreciate the danger involved. From the time they are born all children realize the danger of falling and instinctively clutch at something when they feel that danger is near. While the instinct to climb is practically universal, and it is carried on in a venturesome spirit, a consciousness of the risk of falling is always present. Beyond question, the minor plaintiff when climbing this scaffold knew that there was a risk of falling if he was not careful, knew that if he slipped he would fall, and knew that if he fell he might hurt himself.''

In Severance v. Rose, 151 Cal.App.(2d) 500, 311 P.(2d) 866, the plaintiff, age 10, was injured as the result of a fall from a ski-jump, which was located about 300 to 400 feet from a playground and which plaintiff was using as a slide. In denying recovery, the Court commented: ''The only risk attendant upon its use as a slide when thus resting upon the ground was perfectly obvious, the hazard of falling off the upper end or over either side. No sign warning of this hazard would be necessary for any adult nor for most children, even children of tender years. * * * There was involved no hidden risk, no element of entrapment, no moving machinery to impose upon defendant a duty toward plaintiff to install guard rails, post warning signs or take other precautions for

plaintiff's protection should he choose to use this ski jump as a slide.''

The Court, in Stimpson v. Bartex Pipe Line Co., 120 Tex. 232, 36 S.W.(2d) 473, took a similar position in approving the action of the trial court sustaining defendant's demurrer. In that case, the plaintiff, a 6 year old boy, climbed to the top of an oil storage tank by a stairway. After playing on the flat roof of the tank, the boy attempted to descend by way of a vent pipe, and fell. The Court pointed out: ''It would be difficult, if not impossible, for a landowner to guard against the danger of falling incident to boys climbing on almost any kind of objects. Trees, fences, telephone and telegraph poles, houses, barns, garages, buildings in course of construction, and various other objects present to adventurous childhood the very danger which it is claimed by law imposed the duty upon appellee to guard against. Such a danger was not one peculiar to the condition or instrumentality which is claimed to have been so attractive as to entice the injured party thereon; hence there was no foundation for imposing a duty upon the owner of the oil tank to so guard the same as to prevent a child climbing thereon from falling off. The danger of falling from an object is one that cannot in the very nature of things be eliminated, as the guard erected to prevent falling would itself be susceptible to the same danger if a child climbed thereon. Had the child been allured by the attractive nature of the tank and stairway to go onto appellee's premises and there had existed a latent or hidden defect in the stairway which caused it to give way while it was ascending to the top of the tank, an altogether different situation would be presented. * * * No such hidden or concealed danger is alleged in the petition,

as it is not shown that any part of the oil tank or steps attached thereto was in any way defective or contained any concealed or unsuspecting danger. The facts pleaded merely show a danger which was obvious and patent even to a child of tender years, as such a child in the very nature of things is thoroughly capable of appreciating the fact that, if it falls from a structure of the height of the oil tank, it would in all probability receive an injury.''

Of like import is Brennan v. Kaw Const. Co., 176 Kan. 465, 271 P.(2d) 253; Fourseam Coal Corp. v. Greer, Ky., 282 S.W.(2d) 129; Simonton v. Citizens' Electric Light & Power Co., 128 Tex.Civ.App. 374, 67 S.W. 530; O'Callaghan v. Commonwealth Engineering Corp., 247 N.Y. 127, 159 N.E. 884, 60 A.L.R. 1424; Callahan v. Buttrey (D.C. Mont.), 186 F.Supp. 715. See also the annotation at 145 A.L.R. 322 et seq., wherein it is stated on page 323 that:

''In keeping with these generalizations, and especially with those indicating that in order to establish liability the danger must be one which is not obvious to or recognized by the child, decisions within the scope of this annotation are generally to the effect that, under the attractive nuisance doctrine or kindred principle, liability does not attach to an owner or occupant for an injury to a trespassing child who climbs upon and jumps or falls from a nondefective and stationary structure, at least where the structure is useful and properly located.''

In the present case, we have a situation where the only danger presented is the risk of falling from a nondefective and stationary structure, while climbing. The plaintiff, at the time of his fall, was $11\frac{2}{3}$ years of age, of average intelligence, and, according to the evidence, had been warned of the dangers incident to climbing, and understood the warning. However, even in the absence

of such evidence, the danger presented was so common and obvious that it must have been recognized and appreciated by a child of the age and mentality of the plaintiff. This being true, liability can not be imposed on the defendant for the injuries plaintiff received from a fall, while climbing.

██ "[A] possessor of land is not under a duty to prevent every possibility of harm but only to exercise due care as to those risks which he should realize are unreasonably great and threaten serious bodily harm in a way unlikely to be appreciated by children whose trespass he should foresee. The ability to appreciate danger varies, of course, with the age of the child, and there can be no recovery if the child is of sufficient age and mental capacity to look out for himself under the circumstances presented. See Prosser on Torts (2d Ed. 1955) 441, 443-444; 2 Harper and James, The Law of Torts, 1453-1454." Garcia v. Soogian, 52 Cal.(2d) 107, 338 P.(2d) 433. See also comment (e) to Sec. 339 of the Restatement of Torts.

For the reasons above stated, the judgments of the trial court are reversed and the causes are dismissed. Costs are adjudged against the plaintiffs.

McAmis, P. J., and Parrott, J., concur.