The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Petitioner,

v.

Cleophius COUNTS and Mary Alice Counts, Respondents.

Supreme Court of Tennessee.

Aug. 9, 1976.

Peter H. Curry, Nashville, for petitioner.

Robert T. McGowan, Jack Norman, Nashville, for respondents.

## OPINION

COOPER, Chief Justice.

Cleophius and Mary Alice Counts (hereinafter referred to as plaintiffs) filed an action against the Metropolitan Government of Nashville and Davidson County (herein-

after referred to as defendant), seeking to recover damages for the death of their son, Michael, by drowning in a pond located on the premises of the Bordeaux County Hospital. The hospital is owned and maintained by defendant. At the close of plaintiffs' proof, the trial court directed a verdict for defendant on the ground of governmental immunity, plaintiffs' proof not having shown any affirmative act by defendant necessary to invoke the nuisance exception to the rule of governmental immunity. In granting the motion for directed verdict, however, the trial court specifically found that plaintiffs' proof would have been sufficient to submit the case to the jury under the doctrine of attractive nuisance if the rule of governmental immunity had not been applicable. The Court of Appeals agreed that plaintiffs' proof had made out a prima facie case of attractive nuisance and reversed the trial court's dismissal of the action, holding that a prima facie case of attractive nuisance triggers application of the nuisance exception to the rule of governmental immunity. The Court of Appeals thus remanded the case for a jury determination of defendant's liability under the doctrine of attractive nuisance. We granted defendant's petition for the writ of certiorari in order to consider two issues: (1) whether as a matter of law plaintiffs' proof was sufficient to establish defendant's liability under the attractive nuisance doctrine; and (2) whether the nuisance exception to the rule of governmental immunity encompasses the doctrine of attractive nuisance.

Early on the day of August 9, 1973, Michael Counts, ten years old, was at his home under the care of an older brother and sister. During that morning another brother, Gary, thirteen years old, had been swimming at the cattle pond located on the premises of the Bordeaux County Hospital. Later Gary returned home to see if Michael wanted to go swimming with him. Gary and Michael returned to the pond, gaining entrance to the field in which it was located by stepping over a trampled down portion of the wire fence surrounding the field. The boys swam or waded in the pond for about an hour before Michael ventured out into the deeper water and drowned.

The pond in this case is located in a pasture area adjacent to a playground also maintained by defendant. The playground is in a residential area, and plaintiffs' home is located approximately two blocks away. The playground area and the field in which the pond is located are separated by a fence of woven wire overlain with a strand of barbed wire. The proof shows that portions of this fence were in a state of disrepair and that access to the pasture area was easily gained by merely stepping over trampled down portions of the woven wire and under the barbed wire. The pond is located approximately one hundred feet beyond the fence and is not visible from the playground. There is evidence, however, that the pond is frequented by fishermen who can be seen by the children from the playground and that the existence of the pond is generally known to the neighborhood children. Although neither Michael nor Gary had visited the pond area prior to the day of the drowning, there is evidence that on occasion children visited the pond to watch the fishermen or to play and swim in the water.

The proof concerning the nature of the pond itself in this case reveals that it is an ordinary cattle pond maintained by the county hospital for the purpose of watering livestock. The banks of the pond are seeded with grass, level with the water at some points, and at other points six inches higher than the water. The water is dark and muddy so that the bottom is not visible. The depth of the water at the pond's edge is approximately six inches and gradually increases toward the center of the pond to approximately eighteen feet. The bottom of the pond is not particularly slippery so as to cause difficulty in walking into or out of the pond.

A determination of the applicability of the doctrine of attractive nuisance is in the first place a question for the court. *Williams v. Town of Morristown*, 32 Tenn. App. 274, 222 S.W.2d 607 (1949); *Louisville*

*& N. R.R. v. Ray,* 124 Tenn. 16, 134 S.W. 858 (1911). Viewing the proof in the light most favorable to plaintiff's theory and disregarding any conflicting facts or inferences, the trial court must determine if there is any evidence from which a jury could conclude that all of the elements of the doctrine of attractive nuisance have been established so as to impose liability on defendant. The elements of attractive nuisance in Tennessee are essentially those outlined in the *Restatement (Second) of Torts,* § 339, entitled "Artificial Conditions Highly Dangerous to Trespassing Children:"

" . . . (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

■ In applying the doctrine of attractive nuisance, however, the Tennessee cases have consistently maintained the requirement that the injured child be enticed or lured onto defendant's premises by the instrumentality or condition causing the harm. *See, e. g., Bloodworth v. Stuart,* 221 Tenn. 567, 428 S.W.2d 786 (1968); *Gouger v. Tennessee Valley Authority,* 188 Tenn. 96, 216 S.W.2d 739 (1949); *Pardue v. City of Sweetwater,* 54 Tenn.App. 286, 390 S.W.2d 683 (1965). This rather harsh requirement is modified, however, by application of the playground doctrine under which liability may be established if "the landowner knows

or, by the exercise of reasonable care, should know that children of immature years are habitually trespassing upon his land to use it as a playground, under conditions other than natural, which the landowner knows or should know involve an unreasonable risk of bodily injury and which children because of their youth will fail to discover and appreciate." *Gatlinburg Construction Co. v. McKinney,* 37 Tenn.App. 343, 263 S.W.2d 765, 767 (1953). *See also Pardue v. City of Sweetwater, supra.* The enticement or allurement requirement of the attractive nuisance doctrine in Tennessee and the theory of the playground doctrine are essentially the same as the first element of the *Restatement* rule, requiring that the landowner must know or have reason to know of the presence of trespassing children.

■ Although in the present case there is evidence from which a jury could conclude that defendant knew or should have known of the presence of trespassing children, there is no evidence in the record from which a jury could conclude that any of the remaining elements of the doctrine of attractive nuisance are present. Specifically, the element of an unreasonable risk of death or serious bodily harm is not present because the pond in this case is an ordinary cattle pond and there is no evidence that it is characterized by any unusual or hidden danger. Tennessee cases have consistently applied the rule that absent evidence of an unusual or hidden danger—a danger other than that incident to all bodies of water—a landowner will not be held liable for the death of a trespassing child by drowning in a pond or other body of water maintained on his premises. *Bloodworth v. Stuart,* 221 Tenn. 567, 428 S.W.2d 786 (1968); *Russell v. City of Chattanooga,* 38 Tenn.App. 670, 279 S.W.2d 270 (1954); *Vaughn v. City of Alcoa,* 194 Tenn. 449, 251 S.W.2d 304 (1952); *McCay v. DuPont Rayon Co.,* 20 Tenn.App. 157, 96 S.W.2d 177 (1935); *City of Memphis v. Trice,* 13 Tenn.App. 607 (1931); *Benson v. Howard-Park Brick Co.,* 6 Tenn.Civ.App. 497 (1916); *Cooper v. Overton,* 102 Tenn.

211, 52 S.W. 183 (1899); *compare Williams v. Town of Morristown,* 32 Tenn.App. 274, 222 S.W.2d 607 (1949); *DuPont Rayon Co. v. Roberson,* 12 Tenn.App. 261 (1930). For cases from other jurisdictions in accord with the Tennessee rule, see generally Annot., 8 A.L.R.2d 1254.

Plaintiffs rely on the case of *Williams v. Town of Morristown,* 32 Tenn.App. 274, 222 S.W.2d 607 (1949), in which the defendant municipality was held liable for the drowning of a child and her adult companion in a reservoir maintained as a part of the waterworks system for the city. *Williams* is clearly distinguishable on its facts, however, for evidence in that case established that the water was very clear, and thus deceptive as to depth, and that the walls of the reservoir were steep, sloping, and covered with slick moss, making it extremely difficult for even an adult to pull himself out of the water. The holding in the *Williams* case is thus consistent with the general rule and with our holding as to the facts in the present case.

■ Evidence of the third element of the attractive nuisance doctrine—the inability of children, because of their youth, to discover or comprehend the risk involved—is also absent in this case. It is well established that the attractive nuisance doctrine does not apply to situations in which the condition causing the harm is one involving a common and obvious danger. *Pardue v. City of Sweetwater,* 54 Tenn.App. 286, 390 S.W.2d 683 (1965); *Ray v. Hutchison,* 17 Tenn.App. 477, 68 S.W.2d 948 (1933). The danger of drowning incident to an ordinary pond or other body of water not characterized by an unusual or hidden danger is one so common and obvious that we must assume that it was recognized and appreciated by the ten-year-old child in this case.

■ Finally, the fourth element of attractive nuisance requires a comparison of the utility of maintaining the condition, and the burden of eliminating any danger, with the risk of harm to trespassing children. In this case the pond served the useful function of watering livestock kept by the county hospital. In view of the fact that the risk of drowning in this pond is slight, there being no unusual or hidden danger present, we think that it would be an unreasonable burden to require defendant to maintain a full-time guard or to erect and maintain a fence which would effectively prevent the trespass of children. *See Russell v. City of Chattanooga,* 38 Tenn.App. 670, 279 S.W.2d 270 (1954); *City of Memphis v. Trice,* 13 Tenn.App. 607 (1939).

■ There being no evidence in this record to support a jury finding of defendant's liability under the doctrine of attractive nuisance, we must reverse the Court of Appeals and dismiss this action. In view of the specific holding of the Court of Appeals, however, we are constrained to confront the issue of whether the nuisance exception to the rule of governmental immunity encompasses the doctrine of attractive nuisance. By holding that a prima facie case of attractive nuisance will invoke an exception to the rule of governmental immunity, the Court of Appeals implies that an attractive nuisance is a true nuisance. In support of its holding, the Court of Appeals cites *Pardue v. City of Sweetwater,* 54 Tenn. 286, 390 S.W.2d 683 (1965), and *Johnson v. Tennessean Newspaper, Inc.,* 192 Tenn. 287, 241 S.W.2d 399 (1949). After a study of these cases and *Williams v. Town of Morristown,* 32 Tenn.App. 274, 222 S.W.2d 607 (1949), relied on by plaintiffs, we have concluded that they do not support the holding of the Court of Appeals. In *Williams* the court specifically held that maintenance of the reservoir was a part of the proprietary function of providing a waterworks system for the town of Morristown and for that reason the rule of governmental immunity would not apply. In *Pardue* the defense of governmental immunity was not raised probably because, again, the water tank from which the injured child fell in that case was maintained by the city of Sweetwater in its proprietary capacity. *Johnson v. Tennessean Newspaper, Inc.* is the leading case on the nuisance exception to the rule of governmental immunity. *Johnson* does not involve an attractive nuisance, however, but rather a public nuisance aris-

ing out of the maintenance of a known inherently dangerous condition in a public park which the public-at-large was invited to frequent.

In considering the doctrine of attractive nuisance, we have noted that the term has frequently been criticized as an inappropriate one. Prosser, for example, describes the doctrine as "sadly miscalled by the name of attractive nuisance" in "a supposed analogy to conditions dangerous to children in the highway *or otherwise outside of the premises* . . . ." W. Prosser, the Law of Torts, § 59, at 365, n. 37 (1971) (emphasis added). He proceeds to conclude that liability under the doctrine is only a phase of ordinary negligence liability which operates to establish an otherwise absent duty of due care on the part of a landowner toward trespassing children. *See generally id.* at 364–376. The *Restatement (Second) of Torts* treats the rule as one of ordinary negligence liability and excludes use of the term "attractive nuisance." *See* § 339, Comment, p. 198. In *Anderson v. Peters,* 22 Tenn.App. 563, 124 S.W.2d 717, 720 (1938), the Tennessee Court of Appeals offered the following observation concerning liability under the doctrine of attractive nuisance: "To call the thing from which the injury results an 'attractive nuisance' does not solve the question. . . . The test is whether defendants were guilty of negligence. . . ." For other Tennessee cases discussing the doctrine of attractive nuisance in the language of negligence liability, see *McCulley v. Cherokee Amusement Co.,* 182 Tenn. 68, 184 S.W.2d 170, 172 (1944); *Pirtle v. Hart's Bakery Inc.,* 52 Tenn.App. 131, 372 S.W.2d 209, 212 (1963).

The above-cited authorities convince this court that liability under the doctrine of attractive nuisance is based on defendant's negligence in failing to exercise due care to warn trespassing children of an unreasonably dangerous condition or instrumentality on his land or in failing to render the condition reasonably safe under the circumstances. This statement of the basis of liability under the doctrine of attractive nuisance does not approach the type of con-

duct necessary to invoke the nuisance exception to the rule of governmental immunity. In *Johnson v. Tennessean Newspaper, Inc.,* recently affirmed by this court in *Savage v. Metropolitan Government of Nashville & Davidson County* (Tenn.1976), the court discussed the nuisance exception in terms of the affirmative acts of the municipality in intentionally creating and maintaining a known and inherently dangerous condition from which injury to the plaintiff was almost certain to result. This treatment of nuisance approaches that of nuisance liability based on intentional, as opposed to merely negligent, conduct by defendant. *See* Prosser, *supra,* § 87, at 874.

In addition to this distinction in the basis of liability under the doctrine of attractive nuisance and the nuisance exception to the rule of governmental immunity, we have concluded that nuisance cannot be the basis of liability to a trespasser. A true nuisance is categorized as either private or public in nature. If private, liability is based on a landowner's use of his property in such a manner as to unreasonably interfere with plaintiff's use or enjoyment *of his own property.* Prosser, *supra,* § 89, at 591–602; *see City of Nashville v. Mason,* 137 Tenn. 169, 192 S.W. 915 (1917); *City of Knoxville v. Klasing,* 111 Tenn. 134, 76 S.W. 814 (1903). If public, nuisance liability is based on interference with the public's use and enjoyment of a public place or with other common rights of the public. Prosser, *supra,* § 88, at 583–91; *see Johnson v. Tennessean Newspaper, Inc.,* 192 Tenn. 287, 241 S.W.2d 399 (1949); *City of Knoxville v. Lively,* 141 Tenn. 22, 206 S.W. 180 (1918).

Although a few early Tennessee cases applied the doctrine of attractive nuisance to establish liability of a municipality for a condition maintained in a *public place* (see, e. g., Doyle v. City of Chattanooga, 128 Tenn. 433, 161 S.W. 997 (1913)), we think that the doctrine should be limited in its application to cases involving *trespassing* children. This is the view of the *Restatement* and, we think, the more theoretically sound view. In cases involving a condition maintained in a public place or on or along

a public highway, ordinary principles of negligence or nuisance will suffice to establish a defendant's liability. *Cf. Town of Clinton v. Davis,* 27 Tenn.App. 29, 177 S.W.2d 848 (1943). If, for example, a municipality maintains a dangerous condition on a public street, ordinary principles of negligence will apply because maintenance of a public street is a proprietary function to which the rule of governmental immunity does not apply. *Shepherd v. City of Chattanooga,* 168 Tenn. 153, 76 S.W.2d 322 (1934). *Compare Doyle v. City of Chattanooga,* 128 Tenn. 433, 161 S.W. 997 (1913). If a municipality maintains a dangerous condition in a public park—or other place at which the public has a right to be—the maintenance of which is a governmental function, liability may be founded on maintenance of a public nuisance if the proof establishes the kind of affirmative conduct on the part of the municipality required by *Johnson v. Tennessean Newspaper, Inc.*

In summary, therefore, we hold that an attractive nuisance is not a true nuisance and that liability under the doctrine of attractive nuisance is based on the negligence of the defendant landowner in failing to exercise reasonable care to warn trespassing children of an unreasonably dangerous condition or instrumentality maintained on his premises or in failing to render the condition or instrumentality reasonably safe. In addition, we hold that application of the doctrine is limited to cases in which the injured child is a trespasser. Thus, the doctrine of attractive nuisance cannot invoke the nuisance exception to the rule of governmental immunity, nuisance liability being limited to conditions interfering with plaintiff's use or enjoyment of his own property or with the public's use and enjoyment of a public place or other place where the public rightfully may be.

The judgment of the Court of Appeals is reversed, and the complaint in this case is dismissed. Costs incident to this appeal will be taxed to plaintiffs and their surety.

FONES, HENRY, BROCK and HARBISON, JJ., concur.