| | | |
|---|---|---|
| THE CITY OF WHITE HOUSE, | ) | |
| | ) | **Sumner County Chancery** |
| Plaintiff/Appellee, | ) | **No. 95C-41** |
| | ) | |
| VS. | ) | |
| | ) | **Appeal No.** |
| LAWRENCE RAY WHITLEY, | ) | **01A01-9612-CH-00571** |
| District Attorney General for the Eighteenth | ) | |
| Judicial District for the State of Tennessee, | ) | |
| JOHN CARNEY, District Attorney and | ) | |
| THE STATE OF TENNESSEE, | ) | |
| | ) | |
| Defendants/Appellants, | ) | |
| | ) | |
| TAYLOR (TED) EMERY, Sheriff for Robertson | ) | |
| County, Tennessee, J. D. VANDERVORK, | ) | |
| Sheriff for Sumner County, Tennessee, | ) | |
| | ) | |
| Defendants. | ) | |

<div style="border:1px solid">

**FILED**

**June 18, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

</div>

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE SUMNER COUNTY CHANCERY COURT
AT GALLATIN, TENNESSEE


HONORABLE TOM E. GRAY, JUDGE

John Knox Walkup
Attorney General and Reporter

Gordon W. Smith
Associate Solicitor General
500 Charlotte Avenue
Nashville, TN 37243
ATTORNEYS FOR DEFENDANTS/APPELLANTS

David M. Amonette
554 West Main Street
Gallatin, TN 37066
ATTORNEY FOR PLAINTIFF/APPELLEE


REVERSED AND REMANDED



HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:
SAMUEL L. LEWIS, JUDGE

DISSENTS IN SEPARATE OPINION:
WILLIAM C. KOCH, JR., JUDGE

THE CITY OF WHITE HOUSE,            )
                                    )
    Plaintiff/Appellee,            )
                                    )
                                    )    **Sumner County Chancery**
                                    )    **No. 95C-41**
VS.                                 )
                                    )    **Appeal No.**
                                    )    **01A01-9612-CH-00571**
LAWRENCE RAY WHITLEY,               )
**District Attorney General for the Eighteenth**    )
**Judicial District for the State of Tennessee,**   )
**JOHN CARNEY, District Attorney and**              )
**THE STATE OF TENNESSEE,**                         )
                                    )
    Defendants/Appellants,         )
                                    )
**TAYLOR (TED) EMERY, Sheriff for Robertson** )
**County, Tennessee, J. D. VANDERVORK,**    )
**Sheriff for Sumner County, Tennessee,**   )
                                    )
    Defendants.                    )

# O P I N I O N

The captioned defendants, Lawrence Ray Whitley, District Attorney, John Carney, District Attorney, and The State of Tennessee have appealed from an unsatisfactory non-jury judgment in this suit for a declaratory judgment and mandamus. The other captioned defendants have not appealed. The appellants present the following issue:

> Does Article I, Section 8, of the Constitution of Tennessee prohibit a non-lawyer judge from presiding over a criminal defendant's trial for an offense punishable by incarceration?

## I.

### The Complaint

On March 2, 1995, the plaintiff, The City of White House filed a "Complaint for Declaratory Judgment" alleging the following facts:

1.    The City is situated partly in Sumner County and partly in Robertson County.

2.	The City has created a municipal court and has designated a non-lawyer to act as judge of said court.

3.	The defendants district attorneys have declined to prosecute before said court any offenses punishable by loss of liberty because the incumbent judge is not a licensed attorney, and the defendants' sheriffs have declined to accept for detention any person committed by said judge upon a charge or conviction of such offenses.

The prayers of the complaint were for a declaration of the authority of said judge and duties of the defendants' district attorneys and sheriffs, and for the enforcement of the performance of such duties by mandamus.

The defendants moved to dismiss for failure to state a claim for which relief may be granted.

## II.

### The Judgment

On March 27, 1996, the Trial Court entered the following order:

This matter came on to be heard upon Motion to Dismiss filed by the defendants and Motion to Amend filed by plaintiff, and the Court granted the Motion to Amend, heard oral argument on the Motion to Dismiss and granted plaintiff time to file a supplemental brief. After consideration of the facts as agreed to by the parties and the record, the Court issued a Memorandum dated the 27th Day of March, 1996.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED the Memorandum dated the 27th day of March, 1996 is incorporated herein and made a part hereof and said document reads in words and figures as follows:

1.	Upon its own motion, the Court hereby dismisses the action filed against Taylor (Ted) Emery, the Sheriff for Robertson County, Tennessee, on the basis of improper venue.

2.	The Motion to Dismiss filed by the defendants is hereby denied.

3.	As to the prayer for a Writ of Mandamus, the Court shall conduct a hearing at a date and time agreed upon by plaintiff and

defendants or upon failure to agree at a date and time set by the Court.

The memorandum, which is part of the order, states in pertinent part as follows:

- - - -

A municipal court and not a general sessions court is the city court of White House, but if the judge is elected by popular election pursuant to Ordinance 94-01 Section 1-503 and White House has complied with applicable Tennessee statutory law, the city has established jurisdiction concurrent with the courts of general sessions in cases involving violation of criminal laws of Tennessee.

In paragraph 18 of the Complaint, plaintiff alleges that its municipal judge is vested with concurrent jurisdiction of the general sessions courts of the State of Tennessee. The Municipal Court of White House is not in toto vested with concurrent jurisdiction of the general sessions courts.

- - - -

The only concurrent jurisdiction with general sessions courts conveyed by the City of White House in Ordinance 94-01 is in cases involving violation of criminal laws of the State within the corporate limits of the city.

- - - -

The General Assembly by enactment of T.C.A. 6-4-301 and T.C.A. 16-18-201 - 16-18-207 has manifested an intent to vest in municipal courts' concurrent jurisdiction and authority with courts of general sessions, as set forth in title 40, in all cases of the violation of the criminal laws of the state of Tennessee within the limits of the municipality.

- - - -

Municipal Court judges are not required by Tennessee statute to be authorized to practice law in the Courts of Tennessee.

- - - -

The Court denies the motion of defendants to dismiss this action. The City of White House has complied with Tennessee statutory law to establish a municipal court and to popularly elect a judge. Concurrent jurisdiction and authority with courts of general sessions as set forth in title 40 in all cases of the violation of criminal laws of the State of Tennessee within the limits of municipality exists in the White House City Court.

As to the prayer for a Writ of Mandamus, the Court shall conduct a hearing at a date and time agreed upon by plaintiff and defendants or upon failure to agree at a date and time set by the Court.

After the defendants filed their answer, on May 28, 1996, the Trial Court entered an order stating:

-4-

Upon further consideration by the Court, it appears that the order entered on March 27, 1996, should be amended. It is, therefore, ORDERED, ADJUDGED, AND DECREED, that the order be amended by adding at the end of numbered paragraph three (3) on the last page thereof, the following sentence:

> The scope of the hearing shall include, but shall not be limited to, legal argument on the pending amended motion to dismiss filed on behalf of the State of Tennessee, Lawrence Ray Whitley, and John Carney, as well as any proof and argument that the parties wish to present as to the prayer for a Writ of Mandamus:

And by adding the following new paragraph thereafter:

> 4. The Court orders judgment in favor of the plaintiff with respect to the complaint for declaratory judgment. All other matters are reserved.

On October 15, 1996, the Trial Court entered a further order stating:

> On the 12th day of August, 1996, the Court set this matter for final disposition on the 19th day of September, 1996 with parties having the right to appear, to call witnesses and to present evidence. As an alternative to appearance on the 19th day of September, 1996, the Court allowed the parties to present stipulations and briefs to the Court. After consideration of all the evidence and the entire record.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:
>
> 1. The prayer of plaintiff for a writ of Mandamus to issue to the District Attorney General for the 18th Judicial District and to the District Attorney General for the 19th Judicial District is not well-taken and the prayer is denied and dismissed.
>
> 2. The Court finds no basis upon which to issue a declaration that the sheriff of Sumner County, Tennessee has a duty and obligation to take and incarcerate persons when directed by a municipal court judge.
>
> 3. Costs are assessed equally to the parties for which execution may issue, if necessary.

Thereafter, on November 20, 1996, the Trial Court overruled the motion of appellants for stay pending appeal.

## III.

### Discussion

There is no transcript or statement of the evidence, but the parties have stipulated the pertinent facts.

Appellants assert that Article 1, Section 8 of the Constitution of Tennessee prohibits non-lawyer judges from presiding over the trial of defendant for an offense punishable by incarceration, citing *State ex rel Anglin v. Mitchell*, Tenn. 1980, 596 S.W.2d 779.

In the cited authority, two juveniles were found to be delinquent and committed to the Department of Corrections which, at that time, included institutions for juveniles. From the extensive discussion of the law and disposition of the appeal, it is presumed that the trial judge was not a lawyer, although the opinion does not state this as a fact.

Based upon the constitutional, statutory and judicial authorities cited, a majority of the Supreme Court reversed the committal and said:

> The Constitution of Tennessee contains no specific requirement that judges be "learned in the law," or that they be licensed or admitted to the practice of law.
>
> The only constitutional requirement for judges of the Supreme Court is that they must be thirty-five years of age and must have been a resident of the state for five years before election. *See* Article VI, Section 3. Other judges must be thirty years of age, and must have been a resident of the state for five years and of the circuit or district for one year before election. *See* Article VI, Section 4. Any additional requirements must be imposed by the legislature, which may supplement the minimum requirements of the Constitution so long as the additional requirements are reasonable and not inconsistent with our Constitution. *LeFever v. Ware*, 211 Tenn. 393, 365 S.W.2d 44 (1963).
>
> - - - -
>
> Prior Tennessee cases are not helpful on the precise question we address.
>
> - - - -
>
> All were decided under statutory enactments. None even alluded to the "law of the land" or "due process" requirements of Article I, Section 8 of our Constitution. This is the only question we face.

- - - -

In 1975, the case of *Perry v. Banks*, 521 S.W.2d 549 (Tenn. 1975), came before this Court. Therefore, three members of this Court dismissed the appeal as moot, and did not pass upon the issue.

- - - -

The dissenters in *Perry v. Banks* traced the history of the evolving standards of due process in relation to the Sixth Amendment right to counsel and stated that "[t]here is involved something that 'shocks the most fundamental instincts of civilized man,' when a child is taken before ... (a) lay judge who knows nothing of the treatment to be accorded citizens due to lack of experience and training in the rigorous discipline of the law.'" 521 S.W.2d at 553-54.

> Further, the dissenting members said:
> It is elementary that the right to counsel schooled in the intricacies and complexities produced by the criminal law explosion of the last decade is diluted and may even be destroyed when basic constitutional rights are asserted before a judge who does not possess the skill and knowledge necessary to protect those rights, recognize the issues and resolve them according to established legal principles. There is an inherent inconsistency in guaranteering the right to counsel without providing an attorney judge to preside at the hearing. 521 S.W.2d at 555

The dissenters, therefore, held "that for a non-attorney judge to preside over any criminal trial, juvenile investigation, or hearing under the laws relating to the mentally ill or any other proceeding wherein a citizen may be deprived of his liberty, is violative of the Fourteenth Amendment to to the Constitution of the United States and Article I, Section 8 of the Constitution of Tennessee. (Emphasis supplied). 521 S.W.2d at 555.

There the matter stood until the Court of Appeals for the Middle Section handed down its decision in the companion cases of *State v. Williams* and *State v. Wiser*, on June 27, 1975. These cases involved the trial and commitment of two juveniles before a nonlawyer judge. Judge Drowota, in a brilliant opinion, took note of the advancing standards of due process and held that "the fundamental fairness required by the due process clause of the Fourteenth Amendment of the federal constitution and Article I, Section 8 of the state constitution require the use of an attorney judge." *State v. Williams*, Slip op. at 8 (Tenn.App. June 27, 1975).

> The language of the Court is compelling:
> We feel that it is inherently inconsistent to guarantee the right to counsel without also giving the defendant the right to have an attorney judge when the result of the proceeding is a deprivation of liberty. A reasonable likelihood or probability

of prejudice exists when lay judges preside over juvenile proceedings that result in incarceration. Prejudice is likely or probable because legal proceedings have become increasingly complex and lay judges lack the requisite expertise to resolve complex legal issues and to comprehend and use counsel's legal arguments. (Emphasis supplied). Slip op. at 6

- - - -

That which we accepted without question in an earlier era, today we reject in view of evolving standards of fairness.

"Due process of law is the primary and indispensable foundation of individual freedom. It is the basic and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise." 387 U.S. at 20, 87 S.Ct. at 1439-1440, 18 L.Ed.2d at 542.

If the constitutions by which we govern ourselves are to have continuing vitality and validity they must be sufficiently elastic to grow and expand and absorb and deal with the changes that have marked the evolution of our state and nation and point to its progress. This is why due process can never be a static doctrine of the law. It is not a legal cadaver embalmed in perpetuity. It is a living, breathing, vibrant and vital tenet of our political faith.

- - - -

[1] A basic requirement of due process is the right to a fair trial in a fair tribunal. In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1954).

[2] Our federal constitution, through the Fourteenth Amendment, coins the phrase "due process of law." Our state constitution, through Article I, Section 8, expresses the same idea when it prohibits imprisonment and deprivation of life or liberty, but by "the law of the land." The origin of this phrase in the Tennessee constitution is the Magna Carta. The "law of the land" proviso of our constitution is synonymous with the "due process of law" provisions of the federal constitution. *Daugherty v. State*, 216 Tenn. 666, 393 S.W.2d 739 (1965).

- - - -

Next, in chronological order came In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

- - - -

There the Court said:
> Thus, in terms of potential consequences, there is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution. For that reason, it engenders elements of "anxiety and insecurity" in a juvenile, and imposes a "heavy personal strain." 421 U.S. at 530-31, 95 S.Ct. at 1786, 44 L.Ed.2d at 356.

Further, the Court made it clear that it could perceive "no persuasive distinction" in the risk involved in a delinquency

hearing "and a criminal prosecution, such of which is designed 'to vindicate [the] very vital interest in the enforcement of criminal laws.'" 421 U.S. at 531, 95 S.Ct. at 1786, 44 L.Ed.2d at 356.

Thus, we are instructed by the Supreme Court of the United States that the right to counsel is of a "fundamental character" embraced within the essential requirements of due process, that juvenile trials must accord with "the essentials of due process and fair treatment," that no person may be deprived of his liberty for any offense unless represented by counsel, and that there is virtually no distinction between a delinquency hearing in juvenile court and a criminal court trial for a like offense.

The right to counsel becomes "as sounding brass, or a tinkling cymbal," if there is not a concomitant right to a trial before a qualified judge. Extending the guiding hand of counsel is an idle gesture if there is absent the gingerly approach or a genuine judge. There is, perhaps, some warrant for a lay judge in the disposition of small offenses and due process is not offended; however, in juvenile delinquency cases, where loss of liberty for years is involved, there is no place for an untrained judge.

- - - -

We hold, in the context of a juvenile commitment, that "the law of the land" provision of Article I, Section 8 of the Constitution of Tennessee does not permit a judge who is not licensed to practice law to make any disposition of a juvenile that operates to confine him or deprive him of his liberty.

We do not hold that a juvenile judge - or any other judge - must be licensed lawyer to hold office or to exercise other duties enjoy other jurisdictions. (sic)

- - - -

This cause is remanded to the juvenile court at Centerville for an adjudicatory hearing before a legally competent judge.

Two of the justices dissented, stating:

If the rights of either of the two juveniles whose cases are involved here have in any way been impinged upon by the procedures followed at their hearing in April 1976, there are and have always been ample statutory procedures available for the correction of such errors. To hold that the judge who tried them, however, is constitutionally disqualified from hearing the case is quite another matter and is a departure from precedent and principle in which we cannot concur.

As previously stated, there can no doubt that the majority opinion is well-in-tended and that its purpose is to make is to make meaningful the right to counsel constitutionally guaranteed to youthful offenders, including the right to be represented at the hearing of a juvenile delinquency charge and to be advised of the broad appeal and right to a retrial afforded in the statutory system, including a jury trial if

trial is desired. In our view, these desirable ends could be achieved very simply and with a much less drastic effect upon the juvenile justice system by requiring that in every case in which a juvenile is charged with violation of the criminal law and with being a delinquent, he must be afforded counsel and that there can be no waiver of that right.

It would be a simple matter to reverse this case and to require a re-trial with proper representation of the accused, including advice to them of their right to appeal if found guilty. The law in this state does not and, to our knowledge, never has permitted final judgment to be rendered against minors in civil litigation without assurance that their interests are safeguarded by a guardian ad litem, general guardian or other representative. It would seem that persons charged with delinquency are entitled to at least the same rights, and that parents, custodians or others should not be permitted to waive a juvenile's right to counsel. Such a holding, in our opinion, would preserve intact the juvenile justice system and would also preserve the public policy announced by the legislature therein.

The Supreme Court's adjudications are final and conclusive upon questions determined by it, subject only to review, in appropriate cases, by the Supreme Court of the United States. All other Courts are constitutionally inferior tribunals subject to actions of the Supreme Court, and must abide by the orders, decrees and precedents of superior courts. Constitution of Tennessee, Art. 6, § 1, *Barger v. Brock*, Tenn. 1976, 535 S.W.2d 337.

The Court of Appeals has no authority to overrule or modify opinions of the Supreme Court, *Bloodworth v. Stuart*, 221 Tenn. 567, 428 S.W.2d 786 (1967).

Until a prior decision of the Supreme Court has been reviewed and reversed by the Supreme Court, it is error for a lower court to disregard it. *Payne v. Johnson,* 2 Shannon, Tenn. Cas. 542 (1877).

The decision in *State v. Anglin* applied only to the rights of juveniles. However, the extensive discussion quoted above is strong indication of inclination of the Supreme Court

with reference to the rights of adults, with which a majority of this panel agree, preferring to follow the strong obiter dicta rather than cited authorities from other jurisdictions.

The majority of this panel holds that the constitutional right of any citizen of Tennessee is violated by an order of incarceration of a judge who is not licensed to practice law.

In the light of the foregoing, the issue as to mandamus is moot and requires no discussion.

The judgment of the Trial Court declaring that the present city Judge of White House has authority to commit citizens to confinement as punishment is reversed and vacated. The cause is remanded to the Trial Court for entry of judgment consistent with this opinion and such other proceedings as may be necessary and proper. All costs, including costs of this appeal, are taxed against the City of White House.

## REVERSED AND REMANDED

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:

_____
SAMUEL L. LEWIS, JUDGE

DISSENTS IN SEPARATE OPINION:
WILLIAM C. KOCH, JR., JUDGE